Case number 19-3783. Mario Reyes-Romero v. William P. Barr. All arguments not to exceed 15 minutes per side. Mr. Lawrence D. Rosenberg, supervising attorney. May it please the court, Lawrence Rosenberg for Mr. Reyes presenting argument will be law student Brendan Butel, who is a student at the West Virginia University College of Law. Okay, thank you Mr. Rosenberg. And Mr. Butel, you may enter your appearance and proceed. May it please the court, my name is Brendan Butel and I represent the petitioner Mario Reyes. May I reserve three minutes for rebuttal? You may. Thank you. Mario Reyes was removed from the United States because the government forged documents that deprived him of relief. In light of the government's misconduct, the Western District of Pennsylvania invalidated the prior order of removal. The government now removes Mr. Reyes for a second time on grounds that were expressly precluded by the district court's findings. To rectify this injustice, the court should vacate the removal order and allow Mr. Reyes to return to the United States. The court should do so for three reasons. First, the district court concluded that the serious crime bar was inapplicable as a matter of law, which precluded the IJ and the BIA from finding otherwise. Second, Mr. Reyes has endured due process violations that warrant nunk-pro-tunk relief. And third, the IJ and the BIA erred by denying Mr. Reyes relief under the Convention Against Torture. With respect to the first point, this court should that the IJ and the BIA improperly relitigated the particularly serious crime issue. Under Hammer v. INS, a district court's findings have preclusive effect in subsequent removal proceedings. Here, the district court found that the particularly serious crime bar did not apply. Therefore, this finding should have precluded the IJ and the BIA from reaching a contrary conclusion. Nevertheless, the IJ and the BIA disregarded the district court's particularly serious crime finding and applied the particularly serious crime bar instead, reasoning that the finding was necessary and essential was not necessary and essential to the district court's judgment. The government now supplements the BIA's rationale with two additional claims, arguing that the district court's particularly serious crime finding did not resolve an identical issue and that the particularly serious crime finding was not actually litigated and decided. While this circuit's Chenery Doctrine case law holds that a removal order can't be affirmed based on the government's post hoc assertions, they still merit some discussion here because Mr. Reyes bears the burden of showing that issue preclusion applies. Concerning the government's first claim that the former and latter litigations did not resolve identical issues, the record speaks for itself. The earlier district court decision and subsequent BIA decision both resolved the issue of whether the particularly serious crime bar applied. For issue preclusion purposes, an issue is identical if it involves applying the same law to the same facts. The INA contains a single concept of particularly serious crime. A particularly serious crime conviction renders an alien ineligible for asylum and withholding of removal. Here, the district court determined that the particularly serious crime bar did not apply and thus Mr. Reyes was eligible for asylum. Counselor, this is Judge Strange. Wasn't there a little bit of difference between the decision by the Western District of Pennsylvania? Wasn't the standard that that judge determined whether those claims were reasonably likely to succeed? And isn't that different from what the decision would have to be made regarding the seriousness of the crime? Well, Your Honor, the Western District of Pennsylvania determined as a matter of law that the particularly serious crime bar did not apply because at the time Mr. Reyes would have received a removal hearing, but for the government's misconduct, Mr. Reyes would have been subject to case law such as a LACO, which held that a particularly serious crime conviction would only hold if there were an aggravated felony. And because there was no aggravated felony here, as a matter of law, Mr. Reyes was not subject to the particularly serious crime bar. After the district court made this determination, the BIA thereafter determined that the particularly serious crime bar did apply and thus rendered Mr. Reyes ineligible for asylum and withholding. Both tribunals reached their respective conclusions while citing the same statutory provisions and considering the same facts. Therefore, the district court decision and subsequent BIA decision resolved the identical issue, and the former should control the latter. Concerning the government's second contention that the district court did not actually litigate and decide the particularly serious crime issue, the record's equally clear. The particularly serious crime issue was actually litigated and decided because it was contested by both parties, and the district court issued a final judgment on the merits. For issue preclusion purposes- This is Judge Schranch. I was just checking a moment on the Western District of Pennsylvania's case. Each time that court ruled, the question that it asked is whether the defendant has a reasonably likely chance of success on the merits of asylum cat withholding or removal. Isn't that reasonably likely chance of success a different standard? Isn't it a lesser standard to say, I think it's reasonably likely that you will win, versus- why does that set a binding criterion? Well, Your Honor, that is the case, that the reasonable likely standard was at play in the Western District of Pennsylvania. However, the 132060 affirmative defense, the elements there must be proven by a preponderance of the evidence. In removal proceedings, rather, the alien has the burden of proving by a preponderance of the evidence that the particularly serious crime bar does not apply. That's 8 CFR 1240. The standard of proof was identical in both of these decisions. Really, it is the same standard. The larger point here is just that as a matter of law in 2011, a lack of precludes any possibility of finding that Mr. Reyes had been convicted of a particularly serious crime because Mr. Reyes had not been convicted of an aggravated felony. Under a LACA, a particularly serious crime can only exist where there's an aggravated felony. So as a matter of law, Mr. Reyes could not have been subject to the particularly serious crime bar. And it doesn't matter that the Third Circuit on Bonk overturned a LACA? It doesn't, Your Honor, because Bastardo Vail, the decision that overturned the LACA, was decided after the IJ and BIA decisions at issue here. And the change in law exception shouldn't be applied to allow the government to benefit from the egregious due process violations that took place here, namely, the forging of that the Bastardo Vail decision has some relevance here. The court can plainly see that in 2011, Mr. Reyes would not have been subject to this particularly serious crime bar. And applying the law as it existed in 2011, Mr. Reyes would clearly prevail on a withholding of removal theory of the case. Turning back to issue preclusion, an issue is actually litigated if it was contested by the parties and submitted for determination by the court. Here, both parties did exactly that. And the Western District of Pennsylvania decided the issue by way of a final judgment on the merits. In fact, in later Hyde Amendment proceedings, the government also maintained in the same position that the issues weren't actually litigated and decided. And the district court there called the government's line of argument entirely disingenuous and said that the affirmative defense issues had been central and driven the party's arguments from indictment to dismissal. The government now raises two additional arguments as to why the district court could not have actually litigated and decided these issues, or this issue. First, that section 1252A5 and 1252B9 stripped the district court of jurisdiction to do so. And second, that only the attorney general may determine or decide whether the particularly serious crime bar applies. Neither decision has any merit. First, neither section 1252A5 nor section 1252B9 have any relevance here because the district court had jurisdiction under section 1329, which grants district courts jurisdiction over all INA-based causes of action brought by the government. Second, in Perrine v. Holder and Hernandez-Vasquez v. Holder, this court specifically repudiated the government's claim that the attorney general has sole discretion to assess whether the particularly serious crime bar applies. Thus, the issue was actually litigated and decided in this case. Turning to the final disputed issue preclusion requirement, the court should find that resolving the particularly serious crime issue was necessary and essential to the district court's judgment. In Santana v. Ashcroft, this court made clear that an issue is necessary and essential where its resolution is required to reach a case's holding. Here, resolving the issue was necessary and essential because it was a prerequisite for the district court's conclusion that Mr. Reyes would have been eligible to seek asylum and withholding in 2011. If the particularly serious crime bar had applied, Mr. Reyes would not have been eligible for any such relief. Therefore, given the outcome determinative affest here, the district court's resolution of the particularly serious crime issue was necessary and essential. Accordingly, as each disputed issue preclusion requirement is satisfied, the district court's particularly serious crime finding should have preclusive effect here. Apart from finding issue preclusion, this court should grant Nunk-Pro-Tunk withholding of removal to remedy the due process violations that Mr. Reyes has endured. In the immigration context, Nunk-Pro-Tunk relief provides a present remedy as if it were granted in the past. Here, the government concedes that Mr. Reyes was unfairly deprived of an immigration hearing in 2011. The district court found that the lapse in time and changes in law are all a result of the government's misconduct. Your Honor, I see that my time has expired. May I briefly conclude? Very briefly, yes. In sum, the district court's particularly serious crime finding bound the IJ and the BIA. This court has authority to grant Nunk-Pro-Tunk relief, and the IJ and BIA also erred by failing to grant relief under the Convention Against Torture. For these reasons, the court should base its decision order of removal and allow Mr. Reyes to return to the United States. Thank you. Okay. Thank you, Mr. Buttell. We'll hear next from Ms. Kelly. Thank you. Good morning. May it please the court, this is Genevieve Kelly, representing the United States. Your Honors, the government acknowledges that Mr. Reyes's and the facts surrounding that prior removal, as described by the Western Districts of Pennsylvania, are very problematic and very unfortunate. However, that prior removal formed no basis for the proceedings currently before the court. Except for the fact that the immigration judge, on account of that prior invalid removal, permitted Mr. Reyes to file his asylum application roughly four years late. Other than that, it formed no basis for the proceedings before the court currently. Mr. Reyes is arguing for res judicata, but the district court specifically said that in so ruling against the government in the criminal proceedings that the court reached, quote, Mr. Reyes can, would, or will be removed from the United States in a manner consistent with federal law. Counselor, this is Judge Strach. Why does that have to refer retroactively to what the court just said? The court was clearly unhappy about what happened in that removal proceeding. Why couldn't that language just as appropriately refer to issues of whether Reyes became removable for some new reason moving forward? These proceedings before the district court were wholly separate. Not only would the district court not have had the jurisdiction to rule on the removability issues directly, but the circumstances change often in an asylum application. It's important to keep in mind in this case that the asylum and related relief is always prospective. The question is whether the applicant is showing the likelihood of future persecution or torture. What's important is that they not be subjective to persecution or torture upon their removal. Of course, things can change. Events can change on the ground in the home the relief is really all about what is going to happen in the future. Isn't that, Counselor, what makes this so problematic here? There's a quite good argument that had this been taken up in 2011 rather than having the individual improperly removed from the home, the person would have been awarded one of the protected categories that would allow him to stay. Go ahead and answer. I'm concerned about how do you rectify this wrong? How do you go backwards in time? Your argument that, well, now things are better all these years later, begs the question of someone who might have had a right to stay in the country in 2011 and would still be here, but for improprieties on the part of the government. Sure, Your Honor. First is that ALECA was essentially no longer good law after Matter of Nam, which was the board's decision that predated the district court's judgment here. The district court didn't elect to refer to Matter of Nam as the immigration courts would have in that case, but the reality is that that would have been applied in immigration proceedings then. Secondly, it is hard to litigate the hypotheticals and to determine, well, when is the best time to apply four years late? During those four years living in the United States, he also had a child that formed the potential basis of another application for relief, and it also is unclear that had he applied in 2009, he would have had a better case considering he was closer in proximity to his stabbing conviction. So, it's very difficult to say that he would have had an easier time in 2009, but importantly, applicants for asylum must get protection from persecution and torture, and although many of them may also seek other benefits, such as being in the United States with family or having a job in the United States, and they might think they're missing out on those opportunities if their asylum application is denied, what the immigration courts are really looking at and what Congress is telling them exclusively to look at in this form of relief is the prospective future odds of persecution and torture, and although it could be disappointing to lose out on the other benefits of being in the United States, that's what's really critical here. Well, weren't several of his relatives granted that type of relief on the circumstances in Honduras and El Salvador that this client was faced also? It was a family category, wasn't it? And weren't those individuals granted those types of relief? The briefing, Mr. Reyes's briefing implied that they were. Those proceedings for most of the relatives are still ongoing. There's a hearing on June 29th for two of the relatives that were mentioned in Mr. Reyes's brief, and their applications are still being indicated. It's not clear that they will receive relief. There was another individual who may have had something conclude in March, but it's not clear if it was why their proceedings may have been terminated in March, whether there was a reason. So that's not clear, but also what is clear from the record is that those family members were much closer to the harm than Mr. Reyes was as well. He was living in the United States at the time that they were facing most of their trouble, and so it wouldn't necessarily mean that he's eligible, even if one or more of them in their own right become eligible. I'd like to turn briefly to Mr. Reyes's argument that the particularly serious crime aspect was not, should count as race judicata because it's a legal issue. I'm not sure. I think at one point, Mr. Reyes argues that it was a preponderance of evidence standard, but then says it's a purely legal issue, and so it had to serve as a predicate. In asylum law, first you have to show that you have not been convicted of a particularly serious crime, and then you can apply for asylum. So it is a predicate issue for the immigration judge who has to decide whether to accept that application in the first instance. Here, there's no evidence, and Mr. Reyes doesn't point to any textual evidence from the district court's decision showing that the district court approached that as a predicate issue. The district court opines at one point that because of a lack of, it hypothetically couldn't be considered a particularly serious crime, but it doesn't, there's no text in the district court's argument saying definitively that this is, was not a particularly serious crime. And even if there were that evidence or that determination in the district court's decision, it is true that Congress authorized the attorney general exclusively to make that determination in the first instance. Mr. Reyes cites some case law in his reply brief saying that this particularly serious crime decision is not in the sole and unreviewable discretion of the attorney general. That's true. This court has some review over the attorney general's particularly serious crime decision that's not in his sole and unreviewable discretion. And yet the statute, that's a different issue. How reviewable or the standard of review of that determination is a completely separate question from who is the person that Congress says must make that decision in the first instance. And in both asylum and withholding of removal, Congress clearly says that the attorney general is the one who decides that this is a particularly serious crime. Again, that doesn't mean that the court can't review that determination to some level, but district court does not make that determination. That's particular language, particularly serious crime that Congress wanted to leave up to the specific immigration experts to determine. And so even if the district court had tried to make a definitive statement or a rule of law, or as Mr. Reyes says, a predicate determination of law, that would still not be the identical issue that's been resolved in this case by the immigration court because the question is, what crime does the attorney general determine is particularly serious? And so that's just one more reason why these are not identical issues. With regard to Chenery, Chenery applies for questions that Congress has given the agency the authority to decide and has commanded that the agency decide in the first instance. The immigration courts do not have the authority from Congress to determine what was in the jurisdiction of the district court's opinion or to be interpreting the district. They don't have exclusive authority to interpret the district court's decision. And so for that reason, Chenery doesn't limit the court here and doesn't limit the agency. Also, as a final matter, the government would like to just point out there's still an outstanding motion to supplement the record, or rather, I believe it was filed as a motion to take judicial notice of certain documents. And the government would urge the court to deny that motion. Mr. Reyes didn't really provide a purpose for the documents and didn't seem to cite them in his briefing. And because the supplementation of the record is barred by statute by 1252, and just in the purpose of judicial efficiency, there were a lot of records that were filed pretty soon before the government's response time. And just for an example for future litigants also and for judicial efficiency in this court, the government would urge that that motion be denied. And then finally, with the applicant, Mr. Reyes' CAT application, Mr. Reyes argues that the government ignored some of his evidence and cites specific evidence in the record showing understandably a fear on Mr. Reyes' part to return to El Salvador or Honduras. And the CAT standard is very high. It's not enough to be afraid. It's not enough to have a reasonable basis for your fear. There must be a probability of torture with the acquiescence of the foreign government. And here, which is somewhat unusual in a CAT claim, there is actually record evidence of the government of both El Salvador and Honduras actively trying to stop the perpetrators whom Mr. Reyes fears. Ever was sentenced to six years in prison, the man named the doctor was sentenced to 30 years, and the gang members who tried to recruit Mr. Reyes have either died or were detained later. And so here, in almost an unusual way, we see the government's really working to prevent those perpetrators from harming Mr. Reyes' family or others. And so it is a high bar for CAT protection. And so the court should uphold the board's determination on that. Unless the court has any questions. Okay. Thank you, Ms. Kelly. We appreciate it. Thank you, Your Honor. Thank you. Okay. Mr. Jutel, you have three minutes of rebuttal. Thank you, Your Honor. Three key points on rebuttal. The government suggests that matter of nom would have been entitled to deference from the Third Circuit. On the contrary, Bastardo Veil expressly states that ALECA did not hold the term particularly serious crime to be ambiguous and found that matter of MH, which gave deference to matter of Second, concerning the motion for judicial notice, the documentary evidence proffered there substantiates and contextualizes all of the arguments being made here. In several instances, there are back and forth between counsel and the court concerning the possibility of collateral effect and what more generally the effects of the court's ruling on the 1326D affirmative defense issues would have on subsequent proceedings. And third, separate and apart from issue preclusion and non-protonc relief, the court should find that Mr. Reyes qualifies for relief whose testimony was internally consistent and consistent with documents in the record. Credible testimony standing alone can sustain the burden of proof for cap protection. And Mr. Reyes's testimony illustrates that MS-13 gang members terrorized him with the government's acquiescence because, as he explains, seeking help from the police would only have hastened his death. And the Third Circuit recently addressed the Salvadoran government's acquiescence to MS-13 in Guzman or Elena v. Attorney General, just decided two weeks ago. And there, the Third Circuit observed that neither death nor the arrest of MS-13 gang members was a sufficient basis for concluding that there was no likelihood of torture, which is exactly the government's position here. Likewise, in De La Rosa v. Holder, the Second Circuit held that the act of making arrests does not militate against the finding of governmental acquiescence. And furthermore, documentary evidence in the record shows that MS-13's ubiquitous presence in El Salvador gives MS-13 the power to effectuate revenge killing with the help of state actors. A recent case out of the Second Circuit, Manning v. Barr, holds that the BIA's failure to consider an unrebutted expert report on the likelihood of torture constitutes reversible error, which is precisely what the court should find here. Thank you. Okay. Thank you, counsel, all of you. And I'd like to thank Mr. Rosenberg for your supervision in this case with respect to today's oral argument. And Mr. Butel, as a law student, I think you certainly prepared thoroughly and made an extremely effective presentation today, speaking, you know, for myself. So I'd like to thank you for that. Ms. Kelly, of course, I'd like to thank you for your argument this morning as well. So with that, the case will be submitted, and our deputy clerk can adjourn court for the morning. This court is adjourned. Thank you. Thank you.